## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| SPORT & WHEAT CPA PA, a Florida corporation, individually and on behalf of a class of similarly situated businesses and individuals, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: _____ |
| | ) | |
| SERVISFIRST BANK INC. , SYNOVUS TRUST COMPANY, NATIONAL ASSOCIATION and DOES 1-100, inclusive, | ) ) ) ) | |
| | ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## VERIFIED EMERGENCY CLASS ACTION COMPLAINT FOR, *INTER ALIA*, DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff SPORT & WHEAT CPA PA ("Plaintiff" or "S&W") brings this verified emergency class action complaint (the "Complaint") on behalf of itself and those similarly situated against Defendants SERVISFIRST BANK INC. (hereinafter "ServisFirst"), SYNOVUS TRUST COMPANY, NATIONAL ASSOCIATION (hereinafter "Synovus") and DOES 1-100, inclusive (collectively with ServisFirst and Synovus, the "PPP Lenders") to stop the PPP Lenders' unlawful conduct and to obtain redress for all persons and businesses injured thereby. For its class action complaint, Plaintiff alleges as follows based upon its personal knowledge and upon

information and belief, including investigations conducted by its attorneys.

Given the importance of this issue to CPA firms, attorneys and other financial professionals that are tirelessly and diligently working to assist PPP Lenders' small business customers ("Bank Customers") to obtain PPP loans so that the Bank Customers can avoid laying off literally hundreds of thousands, if not millions of American workers, and because the facts necessary for this Court to issue a temporary restraining order enjoining PPP Lenders from refusing to compensate PPP Agents for the critical services they are providing to implement the Paycheck Protection Program ("PPP") are a matter of public record of which this Court can take judicial notice, S&W is respectfully requesting that this Court undertake this cause that is vital to the American economy and the national interest on an emergency basis and order expedited briefing and set a hearing on this matter as soon as possible.

## **INTRODUCTION**

1.     In response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (hereinafter the "CARES Act").  Among other programs, the CARES Act established the PPP which provides emergency "loans" to small businesses.  Under the CARES Act, the United States Small Business Administration ("SBA") administers the PPP.

2.     Although  nominally  labeled  a  "loan,"  as  the  name  "Paycheck

Protection Program" implies, Congress in fact intended for these PPP loans to be used by small businesses so that the "paychecks" of American workers would be "protected" during the two-month period which was projected to be the most economically difficult period of the pandemic crisis (as opposed to these small businesses shuttering and laying off their workers during such period).

3.   Accordingly, the PPP provides that if a small business uses a PPP loan to continue paying its employees during such two-month period, all or a substantial portion of the PPP loan would be "forgiven."  In general, the amount of a PPP loan a small business could receive was therefore limited to two and half times the business' monthly payroll.

4.   To compensate the PPP Lenders that process the PPP loans for the SBA, the PPP provides for the PPP Lenders to receive a processing fee equal to a percentage of each loan amount.

5.   The PPP also envisioned that some Bank Customers of the PPP Lenders would need the assistance of accountants, attorneys or other financial professionals ("PPP Agents") to assemble, prepare, process and file their PPP loan applications. To incentivize PPP Agents to provide such assistance to the Bank Customers so that the Bank Customers could successfully apply for and obtain PPP loans and therefore avoid laying off their employees, the PPP mandates that the  PPP "Agent fees **will**

**be** paid by the lender out of the fees the lender receives from SBA." [1]

6.    Conversely, in order to ensure that the PPP loan proceeds were used only for their intended purpose, viz., to protect the paychecks of the employees of the small businesses, the PPP further provides that PPP "Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds." [2]

7.    Notwithstanding the clear Congressional intent of the PPP, Defendants ServisFirst and Synovus (the "Named Bank Defendants"), and, on information and belief, other PPP Lenders, have adopted policies whereby they are refusing to pay fees to PPP Agents for their services assisting Bank Customers in obtaining PPP loans.

8.    As a result of these PPP Lenders' policies, on information and belief, thousands of CPAs and other authorized PPP Agents—including S&W in this action—are not being compensated for their work.

9.    These PPP Lenders' policies are unjust and un-American and are unfairly discriminating against the smaller of the small business concerns contrary to Congressional intent because, on information and belief, such concerns are less financially sophisticated, are less likely to employ in-house accountants or lawyers and therefore would be more likely to need the services of a PPP Agent to

---

[1]    SBA first Interim Final Rule, issued on April 2, 2020 (the "SBA First Interim Rule"), 85 FR 20816.
[2]    *Id.*

successfully apply for and obtain a PPP loan.

10.    Indeed the CARES Act specifically provides that "[i]t is the sense of the Senate that the Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in **underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 8(d)(3)(C)), women, and businesses in operation for less than 2 years**."[3]

## BACKGROUND

11.    Small businesses are the backbone of the American economy. Indeed, about half of the people that work in America work for a small business. These businesses and their employees have been hit hard due to the global COVID-19 pandemic.

12.    On March 11, 2020, the COVID-19 outbreak was characterized as a pandemic by the World Health Organization (WHO). Most countries of the world adopted travel restrictions and stay-at-home policies in order to slow the spread of COVID-19 and "flatten the curve" so as to not overwhelm the health industry's

---

[3]    15 U.S.C. §636(a)(36)(P)(iv) (emphasis supplied).

capacity to treat patients.

13.     On March 13, 2020, President Trump issued a proclamation declaring a national emergency concerning the COVID-19 pandemic.

14.     On March 25, 2020, in response to the economic fallout of the COVID-19 crisis, the United States Senate passed the CARES Act. The CARES Act passed the House the next day and was signed into law by President Trump on March 27, 2020.

15.     The CARES Act established a $500 billion government lending program for distressed companies. Unprecedented in size and scope, the legislation was the largest-ever economic stimulus package in U.S. history, amounting to 10% of the total U.S. gross domestic product.

16.     As part of the CARES Act, the Federal government created the PPP, a $349 billion loan program administered by the SBA for small businesses with funds available for loans originated from February 15 through June 30, 2020. The PPP is intended to provide American small businesses with eight weeks of cash-flow assistance through 100 percent federally guaranteed loans. The SBA is a United States government agency that provides support to entrepreneurs and small businesses. The loans were backed by the Federal Government and SBA but administered by private banks. One of the most important aspects of the PPP loans is that the terms provide criteria for loan forgiveness through a process that

incentivizes companies to retain, and not "lay off" employees during this crisis.

17.     In exercising its authority to administer the PPP, the SBA determined that it was the intent of Congress in passing the CARES Act that the fees to be paid to PPP Lenders thereunder would be paid by the SBA.  Indeed, the SBA First Interim Rule clearly provides that the "SBA **will pay** lenders fees for processing PPP loans."[4]

18.     Similarly, the SBA determined that it was Congress' intent that the PPP "Agent fees **will be paid** by the lender out of the fees the lender receives from SBA"[5] and also that PPP "Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds."[6]

19.     At President Trump's signing of the CARES Act, ranking member of the House Small Business Committee Representative Steve Chabot (R-Ohio) praised the legislation as giving small businesses a great chance to reopen.[7]  Senator Marco Rubio (R-Fl), Chairman of the Senate Small Business and Entrepreneurship stated that the "bipartisan small business package...will provide emergency relief so that millions of American workers can keep their jobs and millions of small businesses can stay open."[8] Senate Majority Whip, Senator John Thune (R-SD)

---

[4]  85 FR 20816 (April 15, 2020).
[5]  *Id*.
[6]  *Id*.
[7]  Remarks by President Trump at Signing of H.R.748, The CARES Act, 2020 WL 1485787, at *67.
[8]  Sen.   Rubio,   Press   Release,   3/25/2020   https://www.rubio.senate.gov/public/index.cfm/press-

stated that the PPP loans provided by the CARES Act "will deliver relief to small businesses to help them and their workers weather this storm."[9]

20.     The United States Department of the Treasury announced that starting April 3, 2020, small businesses could apply for and receive loans to cover their payroll and other certain expenses through existing SBA lenders.[10]  Starting April 10, 2020, independent contractors, single members LLCs and self-employed individuals could apply.[11]

21.     Within this context, private banks (i.e., PPP Lenders) serve as an intermediary between small businesses (i.e., Bank Customers) and the PPP being administered by the SBA.

22.     Like many small businesses, those businesses rely on the outside professional services of CPAs and other financial professionals and turned to those professionals to assist them in applying for PPP loans and for preparing and/or gathering the necessary documentation, including tax returns, payroll data and other financial information.

23.     The SBA regulations that govern the PPP loans mandated that the loans

_____

releases?ContentRecord_id=D08E8A75-546A-4C56-A890-B948048E9B5C
[9]     Sen.   Thune,   Press   Release,   3/25/2020   https://www.thune.senate.gov/public/index.cfm/press-releases?ID=CA914CF0-5C3D-4A02-B6F2-84925B5467BD
[10]    https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf
[11]    *Id.*

be distributed "first come, first served."[12]

24.     The financial crisis caused by COVID-19 coupled with the fact that PPP loans would be partially or entirely forgiven if the loans were used to keep American workers employed resulted in a huge demand which quickly overwhelmed PPP Lenders.

25.     As contemplated by the CARES Act and the interim rules issued by the SBA, PPP Agents were authorized to assist PPP Lenders who were literally inundated by the demand for PPP loans.  Indeed, the PPP was in such high demand that its initial $349 billion allotment was exhausted after just 14 days and on April 21, 2020, Congress authorized an additional $320 billion for PPP loans.

26.     Under the SBA's rules, a PPP Agent is defined as an "authorized representative and can be:

> • An attorney;
> • An accountant;
> • A consultant;
> • Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;
> • Someone who assists a lender with originating, disbursing, servicing, liquidating, or  litigating SBA loans;
> • A loan broker; or
> • Any other individual or entity representing an applicant by conducting business with the SBA.[13]

---

[12]  SBA Interim Final Rule § m. [Docket No. SBA-20200015] 13 CFR Part 120 Business Loan Program Temporary Changes; Paycheck Protection Program RIN 3245-AH34
[13]  https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf

27.     To compensate PPP Lenders for their services in assisting Bank Customers, the SBA rules provide that a PPP Lender is entitled to receive origination fees of 5% on loans up to $350,000; 3% on loans between $350,000 and $2 million; and 1% on loans between $2 million and $10 million.[14] That means that a PPP Lender could receive up to $17,500 for processing loans up to $350,000; up to $60,000 for processing loans between $350,000 and $2 million; and up to $100,000 for processing loans between $2 million and $10 million.

28.     These same rules provide that a PPP Agent's

> fees **will be paid** out of lender fees. The lender **will pay** the agent.  **Agents may not collect any fees from the applicant**. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) **may not exceed**:
>
> > • One (1) percent for loans of not more than $350,000;
> >
> > • 0.50 percent for loans of more than $350,000 and less than $2 million; and
> >
> > • 0.25 percent for loans of at least $2 million.[15]

(hereinafter, the "PPP Agent Fees Cap").

29.     For example, that means of the $17,500 that a PPP Lender receives

---

[14]   https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf
[15]   85 FR 20816 (April 15, 2020) (emphasis supplied).

from the SBA for processing a $350,000 loan, if a PPP Lender's Bank Customer uses the services of a PPP Agent to prepare and file the application and supporting documentation, that PPP Agent must "be paid out of lender fees" but such PPP Agent's fees cannot exceed $3,500 (1% of $350,000), i.e., the PPP Agent Fees Cap.

30.    The Named Bank Defendants knew that their Bank Customers had utilized the services of S&W because when they were asked to compensate S&W for the services that it had rendered, each of the Named Bank Defendants stated that they had adopted policies to not compensate any PPP Agents.

31.    On information and belief, to avoid any legal exposure to S&W, some PPP Lenders have outright refused to process a PPP loan application if it is signed by or otherwise refers to S&W as the PPP Agent (even though such PPP Lender in fact knew that S&W had assisted the applicable Bank Customer with such PPP loan application) or they instead required the Bank Customer to use the PPP Lender's on-line PPP application portal to apply for the PPP loan, but they intentionally designed their portal to prevent the Bank Customer from being able to designate or refer to a PPP Agent.  Because such PPP Lenders have not affirmatively refused to pay S&W, they are not now being named as Defendants herein, but S&W reserves the right to do so if S&W later ascertains that such PPP Lenders refuse to pay S&W's reasonable and customary fees (not to exceed the PPP Agent Fees Cap).

32.    As the AICPA recently noted in its Special Report dated April 22, 2020,

CPAs and accounting firms are prohibited from collecting fees from small business clients they help apply for PPP loans and that "[e]very bank seems to understand the rules regarding agents and fees a bit differently, and some are agreeing to pay CPAs for assisting while others are not agreeing to pay CPAs for assisting."

33.    Plaintiff, on behalf of itself and the proposed class (as defined below), seeks, *inter alia,* (i) a declaration from this Court that PPP Lenders must pay PPP Agents the reasonable and customary fees for their services from the fees paid to the applicable PPP Lender for a PPP loan (but not in excess of the PPP Agent Fees Cap), (ii) an injunction enjoining PPP Lenders from discriminating against PPP loan applications which involve the services of a PPP Agent, including, without limitation, advising Bank Customers and PPP Agents that PPP Agents may charge Bank Customers for preparing documents but just not for preparing and filing the actual 2-page PPP loan application and from refusing to accept PPP Loan Applications signed by, or otherwise referring to, a PPP Agent and (iii) an award of damages to S&W and all members of the Class for the reasonable and customary fees they are entitled to for assisting PPP Lenders' Bank Customers to  successfully apply for a PPP loan which PPP Lenders have refused to pay as described herein (but not in excess of the PPP Agent Fees Cap), together with the costs of suit, interest and reasonable attorneys' fees and any other relief this Court finds is just and proper.

## JURISDICTION AND VENUE

34.    This Court has original jurisdiction over this Action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) at least some members of the proposed Class have different citizenship from any Defendant; (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed Class Members exceed $5,000,000 in the aggregate.

35.    This Court has personal jurisdiction over Defendants because Defendants do business in this District and a substantial number of the events giving rise to the claims alleged herein took place in this District.

36.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that S&W provided services to the Named Bank Defendants' Bank Customers who applied for the subject PPP loans while in this District, and Defendants, as PPP Lenders, marketed, promoted, and accepted applications for PPP loans in this District.

## PARTIES

37.    Plaintiff S&W is a Florida corporation with its principal place of business in Pace, Florida. S&W is a CPA firm that provides accounting and tax services to the local community. S&W meets the criteria to be a PPP Agent under the CARES Act.

38.     On information and belief, Defendant ServisFirst is a Florida corporation with its principal place of business in Birmingham, Alabama, that provides, *inter alia*, banking services to individuals and businesses. On information and belief, ServisFirst conducts substantial business in this District either directly and/or through its subsidiaries and/or affiliates.

39.     On information and belief, Defendant Synovus is a national banking association formed under the laws of the United States with its principal place of business in Columbus, Georgia that provides, *inter alia*, banking services to individuals and businesses. On information and belief, Synovus conducts substantial business in this District either directly and/or through its subsidiaries and/or affiliates.

40.     When in this Complaint reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

41.     Plaintiff is unaware of the names, identities, or capacities of the defendants sued as Does 1-100, but is informed and believes and thereon alleges that

each such fictitiously-named defendant is acting as a PPP Lender and providing PPP loans to small businesses (i.e., Bank Customers) and is responsible in some manner for the damages and abridgement of rights described in this Complaint. S&W will amend its Complaint to state the true names, identities or capacities of such fictitiously-named defendants when ascertained.

## FACTUAL ALLEGATIONS

42.     S&W is a CPA firm located in Pace, Florida.  S&W has approximately 1,000 clients, approximately 200-250 of which are small businesses and/or sole proprietorships.

### S&W's Work as a PPP Agent for PPP Lenders' Bank Customers

43.     In or around March of 2020, S&W became aware that the CARES Act and in particular the PPP, had been signed into law.

44.     Like many CPA firms around the country, S&W realized that many of its small business clients and sole proprietorships could benefit from the PPP and likely would be applying for PPP loans and accordingly, S&W began to immediately study the law, regulations and rules and other written guidance being issued by Congress, the Treasury Department and the SBA as well as guidance being issued by the AICPA, banks and other recognized authorities.

45.     S&W estimates that its staff spent collectively approximately 65 man hours of non-billable time learning about the PPP, including, without limitation,

studying the CARES Act and SBA interim rules, reading on-line guidance from institutions, such as the AICPA and articles from other accounting professionals, participating in on-line information sharing groups and blogs and even waking at 3:00 am to watch an on-line webinar on the PPP before beginning the normal work day.

46.     It was generally understood from the available literature that the demand for PPP loans would vastly outweigh the $349 billion that Congress had first appropriated for the program and that because loans would be given out on a "first come/first serve" basis, it was imperative to apply for PPP loans as soon as possible to obtain that highest chance of obtaining one.

47.     S&W also initiated contact with its hardest hit small business clients to inform them of the PPP and advise them that if the PPP loan was used to keep its employees employed during the pandemic, all or a substantial portion of the PPP loan would be forgiven.

48.     Shortly after the PPP became public, S&W was literally inundated with requests from its clients for assistance in applying for PPP loans, many of which were desperately trying to avoid laying off their employees.

49.     Of its approximately 200-250 clients that could apply for a PPP loan, in the months of March and April, S&W assisted approximately 50 clients in preparing, processing and filing PPP loan applications with various PPP Lenders in

and about Pensacola.

50.    In fact, due to the immediate demand of these clients, the fact that it was being projected that the $349 billion allocated for the PPP would be exhausted within a short period of time and that the PPP was set up on a first come/first serve basis, S&W's normal accounting and tax work was substantially interrupted in order to immediately service its clients' demands to apply for PPP loans and the urgency of doing so to obtain the best chance of obtaining them.

51.    S&W's total billable time (to date) to assist its clients in applying for PPP Loans is $13,799, none of which has yet been paid by the PPP Lenders.  While a few PPP Lenders have advised S&W that they intend to pay all or a portion of S&W's fees for the services it provided to such PPP Lenders' Bank Customers, to date, S&W has received nothing.

**ServisFirst**

52.    On or about April 2, 2020, S&W was asked by one of its small business clients (hereinafter "Client R") to assist it in applying for a PPP loan.

53.    Client R is a engineering firm specializing in the design and manufacturing of equipment used by mechanics to repair vehicles.  It is a Florida limited liability company with its principal place of business is in Pensacola, Florida. Client R qualifies as a small business and has 8 employees.  Its primary bank is ServisFirst.

54.     Due to the COVID-19 pandemic and the cessation of almost all of its business, Client R was considering furloughing a number of its workers.

55.     In applying for a PPP loan with ServisFirst on behalf of Client R, S&W expended 6.8 hours of time preparing, processing and filing the PPP loan application and supporting documents resulting in billable time of $723.  S&W will also be required to provide assistance to Client R to prepare the necessary certifications that are required by the CARES Act and the SBA rules for the PPP loan to be forgiven by the SBA (the "Back End Work").

56.     Between April 2, 2020 and April 7, 2020, S&W prepared, signed as PPP Agent, hand delivered and e-mailed to Client R and/or ServisFirst different iterations of the PPP loan applications and supporting documents, and as a result, ServisFirst knew that S&W was acting as Client R's PPP Agent.

57.     ServisFirst ultimately created a PPP loan application portal which they required Client R to use to apply for the PPP loan.  On April 7, 2020, Client R filed its PPP loan application through ServisFirst's portal using the information and documents that S&W had prepared as Client R's PPP Agent and requested a PPP loan in the amount of $94,165.

58.     On or about April 10, 2020, Client R received the PPP loan it had applied for with S&W's assistance as PPP Agent in the amount of $94,165.  Based on the size of this loan, ServisFirst received or will receive in accordance with the

SBA First Interim Rule a PPP loan processing fee of $4,708.25 (5% x $94,165) and from such amount, ServisFirst is required under the same SBA rule to pay S&W's fees as Client R's PPP Agent, but not more than $941.65 (1% x $94,165), i.e., the PPP Agent Fees Cap.

59.     On or about April 17, 2020, Client R asked ServisFirst about payment of S&W fees as Client R's PPP Agent.  ServisFirst advised Client R that "[t]he SBA guidance on charging the client fees **changed** late in the game.  **The Bank has made a decision to not pay agents.**"  Client R communicated this to S&W that same day.

60.     ServisFirst representation to Client R on April 17, 2020 that the SBA guidance "changed" is false and misleading.  In fact, the SBA First Interim Rule that was issued on April 2, 2020 and which mandated that that the  PPP "Agent fees **will be** paid by the lender out of the fees the lender receives from SBA" has, as of the date of this Complaint, not changed at all.

61.     To date, S&W has not been compensated by ServisFirst for its services as Client R's PPP Agent, and S&W has not billed or been paid by Client R for such services due to the SBA First Interim Rule which precludes S&W from doing so.

**Synovus**

62.     On or about March 24, 2020, S&W was asked by another small business client ("Client C") to assist it in applying for a PPP loan.

63.     Client C is a medical group with its principal place of business in

Pensacola, Florida that specializes in predominately elective surgical procedures. Client C qualifies as a small business and has 9 employees. Its primary bank is Synovus.

64.     Because the procedures that Client C performs for its patients are predominately elective procedures, Client C's business had all but stopped due to the COVID-19 pandemic and it was considering furloughing its staff.

65.     In applying for a PPP loan with Synovous on behalf of Client C, S&W expended 8.67 hours of time preparing, processing and filing the PPP loan application and supporting documents resulting in billable time of $893.75. S&W will also be required to provide assistance to Client C for the Back End Work.

66.     On or about April 1, 2020, S&W prepared a PPP loan application which was signed by the client and S&W as its PPP Agent. Thereafter, S&W interfaced with Synovus and assisted in resolving a mismatching of Client C's name by Synovus that caused a delay to its PPP loan application.

67.     As a result of such interactions, Synovus therefore knew that S&W was acting as Client C's PPP Agent in connection with Client C's PPP loan application.

68.     On April 9, 2020, S&W asked Synovus about the payment of S&W fees as Client C's PPP Agent. Synovus advised S&W that Synovus had decided that it would not pay PPP Agents' fees.

69.     In fact, Synovus advised S&W that it understood that other PPP Agents

were being paid to gather and assemble the supporting financial information but just not to prepare the actual 2-page SBA PPP loan application.

70.    After S&W interfaced with Synovus' PPP team and the mismatched name issue was resolved, on or about April 17, 2020, Client C was finally able to access Synovus' online portal to apply for a PPP loan, and Client C did so using the financial information and supporting documentation that S&W had prepared for it as its PPP Agent.  The application sought a PPP loan in the amount of $163,303.

71.    On or about, April 21, 2020, Client C received its PPP loan in the amount of $163,303.

72.    Based on the size of this PPP loan, Synovus received or will receive in accordance with the SBA First Interim Rule a PPP loan processing fee of $8,165.15 (5% x $163,303) and from such amount, Synovus is required under the same SBA rule to pay S&W's fees as Client C's PPP Agent, but not more than $1,633.03 (1% x $163,303), i.e., the PPP Agent Fees Cap.

73.    To date, S&W has not been compensated by Synovus for its services as Client C's PPP Agent and it has not billed or been paid by Client C for such services due to the SBA First Interim Rule which precludes S&W from doing so.

## CLASS ACTION ALLEGATIONS

74.    As noted above, Plaintiff brings this action on behalf of itself and a state-wide class, defined as indicated below.

75. **The Class Definition**: All PPP Agents in the State of Florida who assisted PPP Lenders' Bank Customers in obtaining PPP loans but were refused payment of their PPP Agents' fees by the applicable PPP Lender.

76. Excluded from the Class are Defendants, as well as their officers, employees, agents, board members and legal counsel, and any judge who presides over this action (or spouse or family member of presiding judge), as well as all past and present employees, officers and directors of the Defendants.

77. S&W reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiffs' motion for Class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery, including, without limitation, converting this case to a national class action or a multidistrict litigation.

78. *Numerosity*: The Class is composed of thousands of PPP Agents, whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties and the courts.

79. *Existence and Predominance of Common Questions of Fact and Law*: There is a well-defined community of interest in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

a.   Did PPP Lenders have the legal right to refuse to compensate PPP Agents who assist the PPP Lenders' Bank Customers in successfully applying for PPP loans?

b.   Did PPP Lenders have a policy and/or practice of refusing to pay PPP Agents for their services in assisting PPP Lenders' Bank Customers to successfully apply for a PPP loan?

c.   Were PPP Agents required to first reach agreement with a PPP Lender as to the fee the PPP Lender would pay the PPP Agent for assisting the PPP Lender's Bank Customer in applying for a PPP loan in order to have the right to receive such fee?

d.   Did the PPP Lenders' conduct constitute "unfair or deceptive acts or practices in the conduct of any trade or commerce" under the Fla. Stat. §501.204(1)?

e.   Did PPP Lenders benefit from the services that the PPP Agents provided to the PPP Lenders' Bank Customers such that the PPP Lenders are required to compensate the PPP Agents under equitable principles, such as *quantum meruit*?

f.   Whether the PPP Lenders' conduct, as alleged herein, was intentional and knowing?

g.   Whether Class Members are entitled to damages and/or *quantum*

*meruit* for the reasonable and customary value of their services as PPP

Agents and if so, how is that to be determined;

h.      Whether Class Members are entitled to be paid for the Back End Work

from the PPP loan origination fees paid to the PPP Lenders by the SBA

and if so, when can a PPP Agent seek payment for the Back End Work;

and

i.      Whether Plaintiffs and Class Members are entitled to an award of

reasonable attorney's fees, pre-judgment interest and costs of suit.

80.     *Superiority*: In engaging in the conduct described herein, Defendants

have acted and failed to act on grounds generally applicable to Plaintiff and other

Class Members. Such conduct requires the Court's imposition of uniform relief to

ensure compatible standards of conduct toward Class Members and to make

injunctive or corresponding declaratory relief appropriate for all Class Members. A

class action is superior to all other available means for the fair and efficient

adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class

Members could afford to seek legal redress of the wrongs complained herein on an

individual basis. Absent class action, Class Members and the general public would

not likely recover, or have the chance to recover, damages or restitution, and

Defendants would be permitted to unjustly retain the proceeds of their misdeeds.

81.     *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members. Plaintiffs and the Class Members have all been damaged by Defendants' unfair and unlawful practice of refusing to compensate PPP Agents for their services assisting the PPP Lenders' Bank Customers in applying for PPP loans as mandated by the SBA First Interim Rule, as alleged herein. The factual and legal bases of Defendants' liability to Plaintiff and each Class Member are substantially similar, resulting in injury to Plaintiff and each Class Member as a result of Defendants' actions as described herein.

82.     *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class and Plaintiff's interests do not conflict with the interests of the Class Members that Plaintiff seeks to represent.  Plaintiff will fairly and adequately represent and protect the interests of other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other Class Members.

83.     *Ascertainability*: Plaintiff and the Class Members are informed and believe that because the vast majority of PPP Agents have professional licenses (CPAs, attorneys, and other licensed financial professionals) and are registered with the State of Florida and because the SBA keeps extensive computerized records of

their PPP loans as well as their borrowers (i.e., the PPP Lenders' Bank Customers) and associated PPP Lenders through, *inter alia*, computerized PPP loan application systems and Federally mandated record keeping which include contact information, including email and home mailing addresses, Plaintiff submits that the vast majority of Class Members, if not 100% of Class Members, may be identified and ascertained, and accordingly, notice of this action could be disseminated in accordance with due process requirements.

## FIRST CLAIM FOR RELIEF
**On Behalf of the Class**
**Against All Defendants**
**(Violation of the Florida Unfair and Deceptive Trade Practices Act)**

84.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1 through 83 of the Complaint as though fully set forth herein and incorporates the same by this reference.

85.    Plaintiff asserts this cause of action on behalf of itself and members of the Class.

86.    Section 501.204(1) of Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201 et seq., provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the Act shall be "construed liberally to promote the protection" of the "consuming public and legitimate business enterprises from those who engage in… deceptive[] or unfair acts or practices in the conduct of any trade or commerce."

Fla. Stat § 501.204(2) (2020).

87.    Defendants were, at all times material to the allegations herein, engaged in "trade or commerce' as defined by the Act. Fla. Stat. § 501.203 (2014).

88.    Defendants, as PPP Lenders, knew or should have known that many of their Bank Customers were not sophisticated enough and/or lacked the necessary accounting skills and/or did not maintain the necessary financial data, to be able to successfully apply for a PPP loan without the assistance of a PPP Agent.

89.    Defendants also knew or should have known that their Bank Customers would seek the assistance and in fact did seek the assistance of CPAs, attorneys and other PPP Agents to assist them in applying for PPP loans with Defendants.

90.    Based on the assistance from the PPP Agents, the Bank Customers successfully applied for PPP Loans with their PPP Lenders which were issued by the SBA.

91.    As a result of these PPP loans, the SBA has paid the PPP Lenders the processing fees that are due PPP Lenders under the SBA First Interim Rule.  These processing fees include the fees (subject to the PPP Agent Fees Cap) that that are due and owing to PPP Agents for their services.

92.    The Defendants obtained the services of and benefits provided by the PPP Agents to the Defendants' Bank Customers and as a result, Defendants have earned substantial PPP loan processing fees, but have refused to compensate the PPP

Agents the reasonable and customary fees that the PPP Agents are owed for assisting such Bank Customers as PPP Agents as mandated by the SBA First Interim Rule and accordingly, Defendants' refusal to do so is an unfair and deceptive business act or practice.

93.     Through their unfair acts and practices, Defendants have improperly obtained fees from the Federal government at the expense of Plaintiff and the Class.

94.     As such, Plaintiff requests that this Court cause Defendants to disgorge the portion of these fees that Congress intended to be used to pay PPP Agents the reasonable and customary fees for their services, and to enjoin Defendants from continuing to violate the FDUTPA as discussed herein and/or from violating the FDUTPA in the future, particularly because Congress has allocated an additional $320 billion in funds for the PPP on April 21, 2020 and a new round of PPP loan applications is already underway. Otherwise, Plaintiff, the Class and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

> a.     For an order certifying the Class as defined above, appointing Plaintiff as Class representative for the Class, and appointing Plaintiff's counsel as Class counsel for the Class;

b.   That the Court adjudge and decree that Defendants have engaged in the conduct complained of herein;.

c.   That the Court adjudge and decree that the conduct complained of in refusing to pay the reasonable and customary fees of PPP Agents that assist the PPP Lenders' Bank Customers in successfully applying for PPP loans constitutes deceptive and unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes;

d.   That the Court enjoin the Defendants from further violations of FDUTPA;

e.   That the Court enjoin the Defendants from failing to pay the reasonable and customary fees of PPP Agents that assist PPP Lenders' Bank Customers in successfully applying for PPP loans as required by the SBA First Interim Rule;

f.   That the Court award damages (not to exceed the PPP Agent Fees Cap), civil penalties, attorney's fees, prejudgment interest and costs to the Plaintiff for the prosecution of this action pursuant to Section 501.2105, Florida Statutes;

g.   Award any such equitable or other relief pursuant to Section

501.207(3), Florida Statutes;

h.  Award such other and further relief as the Court deems just and proper; and

i.  Plaintiff hereby demands a jury trial.

**SECOND CLAIM FOR RELIEF**
**On Behalf of the Class**
**Against All Defendants**
**(Unjust Enrichment)**

95.  Plaintiff repeats and re-alleges the allegations in Paragraphs 1 through 83 of the Complaint as though fully set forth herein and incorporates the same by this reference.

96.  Plaintiff asserts this cause of action on behalf of itself and members of the Class.

97.  Plaintiff performed services for the PPP Lenders' Bank Customers by assisting them in successfully preparing, processing and filing PPP loan applications and incurred costs in that effort which also benefited Defendants.

98.  Defendants knew or should have known of the services Plaintiff was providing as a PPP Agent to the Defendants' Bank Customers, of the benefits those services provided and of Plaintiff's expectation of being compensated the reasonable and customary fees for such work as provided under the SBA First Interim Rule.

99.  Defendants accepted Plaintiff's services and retained the benefit of those services by, *inter alia*, obtaining PPP loans for their Bank Customers for which

they received substantial fees from the SBA under the SBA First Interim Rule.

100.   Defendants have been unjustly enriched as a result, and under the circumstances, it would be inequitable for them to retain all of SBA PPP loan processing fees paid to them by the SBA without paying Plaintiff for the value of its services as PPP Agent. In addition and/or in the alternative, under the totality of all of the circumstances, Plaintiff is entitled to a reasonable fee for its services as PPP Agent  plus reimbursement of their costs.

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendants for unjust enrichment as follows:

      a.     For an order certifying the Class as defined above, appointing Plaintiff as Class representative for the Class, and appointing Plaintiff's counsel as Class counsel for the Class;

      b.     For an award of the reasonable value of the services provided by each PPP Agent and/or the amount by which Defendants were unjustly enriched (not to exceed the PPP Agent Fees Cap);

      c.     For all costs of suit;

      d.     For post judgment interest at the maximum legal rate;

      e.     For such other and further relief as deemed just and proper;

      f.     For reasonable attorneys' fees; and

      g.     Plaintiff hereby demands a jury trial.

## THIRD CLAIM FOR RELIEF
**On Behalf of the Class**
**Against All Defendants**
**(For Declaratory Relief)**

101.   Plaintiff repeats and re-alleges the allegations in Paragraphs 1 through 83 of the Complaint as though fully set forth herein and incorporates the same by this reference.

102.   Plaintiff asserts this cause of action on behalf of itself and members of the Class.

103.   Plaintiff asserts that SBA First Interim Rule mandates that the PPP "Agent fees **will be** paid by the lender out of the fees the lender receives from SBA."

104.   On information and belief, Defendants assert that the SBA First Interim Rule is discretionary and PPP Lenders have the right to choose not to compensate PPP Agents that assist the PPP Lenders' Bank Customers in successfully applying for PPP loans.

105.   There is an actual controversy between Plaintiff and Defendants regarding whether PPP Lenders are required under the SBA First Interim Rule to compensate PPP Agents as asserted by Plaintiff herein.

106.   Plaintiff is entitled to a binding declaration of its rights to be compensated by PPP Lenders as asserted herein.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a declaration having the force of a final judgment that PPP Lenders are required to

pay the reasonable and customary fees of PPP Agents (not to exceed the PPP Agent Fees Cap) who assist a PPP Lender's Bank Customer in successfully applying for a PPP loan out of the PPP loan processing fees received by such PPP Lender from the SBA with respect to the applicable PPP loan issued to such Bank Customer.

**FOURTH CLAIM FOR RELIEF**
**On Behalf of the Class**
**Against All Defendants**
**(Injunction)**

107.   Plaintiff repeats and re-alleges the allegations in Paragraphs 1 through 83 of the Complaint as though fully set forth herein and incorporates the same by this reference.

108.   Plaintiff asserts this cause of action on behalf of itself and members of the Class.

109.   PPP Lenders' obligation to pay PPP Agents for their services is mandated by the SBA First Interim Rule.

110.   Defendants' conduct in refusing to pay PPP Agents for their work in successfully assisting PPP Lenders' Bank Customers to apply for PPP loans is unlawful and unjust enrichment and is causing irreparable injury to Florida small businesses, because PPP Agents will cease assisting such Bank Customers if they are not entitled to be compensated for their work.

111.   As a result, many Florida small business will not receive PPP loans and many will fail, causing the unemployment of thousands of Florida workers, contrary

to the intent of Congress in creating the CARES Act and the PPP.

112.   PPP Agents, Bank Customers and indeed the public in general will be irreparably harmed if the PPP Lenders' unlawful conduct is allowed to continue.

113.   Plaintiff has raised sufficiently serious questions going to the merits of the causes of action asserted herein to make them a fair ground for litigation and the balance of hardships tip decidedly in Plaintiff's and the Class' favor.

114.   For the reasons identified above, Plaintiff and those similarly situated are without an adequate remedy at law absent an injunction prohibiting the PPP Lenders from refusing to pay the reasonable and customary fees of PPP Agents that perform services for PPP Lenders' Bank Customers to successfully apply for PPP loans.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter an injunction ordering that PPP Lenders are enjoined and restrained from refusing to pay the reasonable and customary fees of PPP Agents (not to exceed the PPP Agent Fees Cap) who assist a PPP Lender's Bank Customer in successfully applying for a PPP loan out of the loan processing fees received by such PPP Lender from the SBA

with respect to the applicable PPP loan issued to such Bank Customer.

## **JURY DEMAND**

Plaintiff requests trial by jury of all claims that are so triable.

## **VERIFICATION**

I hereby swear under penalty of perjury that the foregoing is true and correct

to the best of my knowledge.

    /s/ John S. Wirt
*Counsel for the Plaintiff*
*Sport & Wheat CPA PA*

Dated:    April 26, 2020    Respectfully submitted,

    /s/ John S. Wirt
John S. Wirt, Esq.
WIRT & WIRT, P.A.
5 Calhoun Ave, Suite 306
Destin, FL 32541
Tel: 847-323-4082
Fax: 314-431-6920
jwirt@wirtlawfirm.com
*Attorneys for the Plaintiff*
*Sport & Wheat CPA PA*
FL Bar # 0117640