IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| SPORT & WHEAT CPA PA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-05425-TKW-HTC |
| | ) | |
| SERVISFIRST BANK, | ) | |
| SYNOVUS BANK, THE FIRST, | ) | |
| and TRUIST BANK, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SERVISFIRST BANK'S
MOTION TO DISMISS THE AMENDED COMPLAINT
AND SUPPORTING MEMORANDUM OF LAW**

In March of this year, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116- 136 (the "CARES Act" or the "Act"). Prominent in the Act was the Paycheck Protection Program (the "PPP"), which was designed to get money into the hands of small businesses so that they could continue to pay their employees during the economic downturn created by the COVID-19 pandemic. To accomplish that goal, the PPP authorized loans to small businesses—loans to be made by lenders like the defendants here and to be guaranteed by the Small Business Administration ("SBA"). In recognition of the important role of lenders in the PPP program and the efforts that would be required of them to process these loans, Congress directed the SBA to

1

"reimburse" lenders for their efforts, and Congress set specific amounts for that "reimbursement." *See* 15 U.S.C. § 636 (a)(36)(P) (directing that "[t]he Administrator shall reimburse a lender" in specified amounts and further directing that the "reimbursement … shall be made not later than 5 days after the disbursement of the covered loan.").

Plaintiff Sport & Wheat CPA PA ("S&W") now asks the Court to ignore this clear Congressional directive and divert millions of dollars of statutorily-mandated fees to unknown third parties.  On behalf of all "agents," S&W demands that lenders pay everyone who claims to have helped a borrower obtain a PPP loan—regardless of whether the "agent" had any agreement with a lender. There is no legal basis for this demand.  Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Amended Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

### I.   The CARES Act and the PPP

On March 27, 2020, President Trump signed the CARES Act into law. The Act established a new SBA loan program, the PPP, and directed the SBA to reimburse lenders participating in the program in specific amounts.  The Act provides:

(P) Reimbursement for processing

(i) In general

> The Administrator shall reimburse a lender authorized to make a covered loan at a rate, based on the balance of the financing outstanding at the time of disbursement of the covered loan, of –
>
> > (I)  5 percent for loans of not more than $350,000;
> >
> > (II)  3 percent for loans of more than $350,000 and less than $2,000,000; and
> >
> > (III)  1 percent for loans of not less than $2,000,000.

15 U.S.C. § 636(a)(36)(P)(i).

In contrast to this clear and specific Congressional direction that lenders be paid certain amounts to reimburse them for their efforts in processing PPP loans, Congress did not direct that agents involved in the PPP process be paid anything.  Instead, Congress authorized the SBA to *limit* the amount of any fee that could be collected by an agent for assisting a borrower in preparing a PPP loan application.  *See* 15 U.S.C. § 636(a)(36)(P)(ii) ("An agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator.").

On April 15, 2020, the SBA promulgated the First Interim Final Rule, 85 Fed. Reg. at 20,811 ("IFR" or "First IFR"), by which, among other things, it established limits on agent fees.  The First IFR states:

> *Who pays the fee to an agent who assists a borrower?*
>
> Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:
>
> > i.    One (1) percent for loans of not more than $350,000;
> >
> > ii.   0.50 percent for loans of more than $350,000 and less than $2 million; and
> >
> > iii.  0.25 percent for loans of at least $2 million.
>
> The Act authorizes the Administrator [of the SBA] to establish limits on agent fees. The Administrator, in consultation with the Secretary [of the Treasury], determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans.

85 Fed. Reg. at 20,816.

The First IFR does *not* state that lenders must pay agent fees regardless of whether the agent has been authorized by the lender.  Rather, it speaks to what an agent "*may* collect from the lender." *Id.* (emphasis added).

On April 22, 2020, shortly after the First IFR was released, the American Institute of Certified Public Accountants ("AICPA") released a special report on the PPP *confirming* that interpretation of the IFR.  *See* Ex. A, AICPA, *Small Business Loans Under the Paycheck Protection Program: Issues Related to CPA*

4

*Involvement* (Apr. 22, 2020) ("AICPA Report").  The report advised that "CPAs should note, that even though the Treasury has outlined guidelines related to agency fees, there is a possibility that you will not be paid for your services, even when noting you are an agent to the application. . . .  It is important to discuss this issue with clients *and the banks* to ensure there is an understanding, *preferably in writing*, as to how and when any fees will be paid." *Id.* at 3 (emphasis added).

In the Act and the First IFR, Congress and the SBA were focused on putting a cap on agents' fees and ensuring that borrowers did not pay them—that is all, as the AICPA report implicitly acknowledges.

## II.    S&W Claims It Helped Its Client Apply for a PPP Loan and Is Therefore Entitled to Part of ServisFirst's Fee

S&W alleges that, on April 2, 2020, it was asked by one of its small business clients, "Borrower R," to assist it in applying for a PPP loan.  Am. Compl. ¶ 81.  It also alleges that "Each Borrower agreed to pay Sport & Wheat— its longtime accounting firm on other matters—for the value of its time spent in PPP transactions." *Id.* at ¶ 68.

S&W alleges further that "[b]etween April 2, 2020 and April 7, 2020, Sport & Wheat prepared, signed as PPP Agent, hand-delivered, and e-mailed to Borrower R and ServisFirst different iterations of the PPP loan application and supporting documents." *Id*. at ¶ 86.  On that basis, S&W alleges that ServisFirst was aware that Borrower R was working on the application." *Id*. at ¶ 87.

5

S&W alleges that ultimately, on April 7, 2020, "Borrower R filed its PPP loan application through ServisFirst's portal using the information and documents that Sport & Wheat had prepared." *Id*. at ¶ 88. And, on or about April 10, 2020, ServisFirst funded the requested loan for Borrower R. *Id.* at ¶ 89.

S&W contends that, because ServisFirst was aware that it was assisting Borrower R in making a PPP loan application, once the loan was funded, ServisFirst was required to pay it a portion of its statutory reimbursement fee. *Id.* at ¶ 91. Importantly, however, S&W does not allege that it sought authorization from ServisFirst to do any work, that ServisFirst authorized it to do any work, or that ServisFirst agreed to compensate it for doing any work.

## LEGAL STANDARD

"[T]o survive a motion to dismiss, a complaint must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, are insufficient.

When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

## ARGUMENT

This Court should dismiss the Amended Complaint because it contradicts the plain language of the CARES Act. Under 15 U.S.C. § 636 (a)(36)(P)(i), ServisFirst is entitled to a fee, in the amount of $4,708.25, *see id.* at ¶ 90, as reimbursement for its efforts in processing the PPP loan of Borrower R. ServisFirst has no duty to share that fee with anyone, and S&W is not entitled to any portion of it. S&W cannot escape this reality no matter what legal label it puts on its assertion. S&W is not entitled to declaratory relief (Count Four) because the plain language of the CARES Act does not require a lender to pay agent fees, and even if it did, there is no private right of action for failure to do so. Further, S&W's unjust enrichment claim (Count One), contract implied in law claim (Count Two), and conversion claim (Count Three) all fail to state a claim under Florida law.

**I.    The CARES Act and Its Regulations Create No Affirmative Entitlement for Agents That Assist PPP Applicants.[1]**

---

[1] In this and the following section of its Motion and Memorandum, ServisFirst has adopted the arguments put forth in Defendant Synovus Bank's Motion to Dismiss the Amended Complaint and Memorandum of Law in Support Thereof. *See* Doc. 46.

The plain language of the CARES Act bars S&W's claims.  *See Lamie* v. *United States Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.").  This is because the Act creates a reimbursement fee for lenders, in specific amounts depending on the loan size, and it says nothing about lenders being required to share that fee with anyone else.  Conversely, the Act merely directs the SBA to establish a limit on agent fees.  The deliberate difference in statutory language between what lenders "*shall* [be] reimburse[d]" and what agents "may *not* collect" is striking.  *See In re Failla*, 838 F.3d 1170, 1176–77 (11th Cir. 2016) ("The presumption of consistent usage instructs that '[a] word or phrase is presumed to bear the same meaning throughout a text' and that 'a material variation in terms suggests a variation in meaning.'" (quoting Antonin Scalia & Bryan A. Garner, *Reading Law* 170 (2012)).  While S&W would like the Act to say that "*agents shall be compensated by lenders*," it does not, and S&W cannot rewrite the statute to create an entitlement that Congress rejected.

> ### B.   The First IFR Does Not Create an Entitlement to Agent Fees.
>
> #### 1.   The Plain Language of the First IFR Creates No Entitlement to Agent Fees.

Unable to find any support in the CARES Act itself, S&W contends that the First IFR "entitled [it] to fees" paid by lenders, even absent lender authorization.

Am. Compl. ¶¶ 112, 189.  In short, it does not.  Rather, the First IFR (1) sets out a schedule of maximum fees "an agent *may* collect" for assistance in preparing an application for a PPP loan, and (2) states that if such fees are paid, they are to be paid out of the fees the lender receives from the SBA.  85 Fed. Reg. 20,815 (emphasis added).  Nothing in the rule requires a lender to pay agents' fees.  It is only a limitation on the amount and source of agent fees.

Moreover, the First IFR cannot create an entitlement that does not exist in the Act itself.  *See Love*, 310 F.3d at 1352–53; *see also Lyng v. Payne*, 476 U.S. 926, 937 (1986) ("[A]n agency's power is no greater than that delegated to it by Congress.").  Instead, the rule must be read in a way that is consistent with its empowering statute. *See Sec'y of Labor, Mine Safety & Health Admin. v. W. Fuels-Utah, Inc.*, 900 F.2d 318, 320 (D.C. Cir. 1990).  Here, neither the Act nor the informal rule creates an entitlement to agent fees.

### 2.   Existing SBA Regulations Confirm There Is No Entitlement to Agent Fees.

Existing SBA regulations confirm there is no entitlement to agent fees.  The First IFR makes clear that the 7(a) background regulations are applicable, *see id.* at 20,815, and S&W agrees that the PPP regulations must be read in the context of the existing 7(a) regulatory scheme.  *See* Am. Compl. ¶¶ 43, 65–67.

The SBA does not require borrowers or lenders to use agents in connection with 7(a) loans.  Indeed, borrowers and lenders may "conduct business with SBA

without a representative." 13 C.F.R. § 103.2(a). But when agents are used, the SBA regulations dictate who may pay the fee. The background regulations governing the 7(a) loan program recognize three categories of agents: (1) lender service providers, who work for the lender and are paid by the lender; (2) "packagers," "who prepare[] the Applicant's application for financial assistance and [are] employed and compensated by the Applicant"; and (3) loan brokers, who intermediate between lenders and borrowers and can be paid by either the lender or the borrower, but not both. *See* 13 C.F.R. § 103.1(a).

The agents referred to in the CARES Act and the First IFR are akin to the "packagers" who are, by preexisting regulation, "compensated by the Applicant." *See id.* To be sure, the First IFR varies that rule by requiring such agents to be paid, *if at all*, by the lenders. And just as § 103.1(a) does not create an affirmative obligation of borrowers to use or pay "packagers," the First IFR imposes no such obligation on lenders.

Section 103.1(a) also requires that an agent, whether of a lender or a borrower, be an "authorized representative." *Id.* As S&W concedes, ServisFirst clearly communicated that it was *not* compensating agents, *id*. at ¶ 93, and did not enter into any agreement authorizing S&W to serve as an agent on a PPP application. Therefore, S&W was never "authorized" under § 103.1(a) as required.

S&W's theory that an agent is entitled to compensation *by the lender* so long as *the borrower* "agrees to hire a PPP agent," *id.* ¶ 65, has it exactly backwards.[2]

S&W's claim of entitlement to fees is also contrary to 7(a) loan program agent certification requirements. To ensure that agents are properly authorized and have performed the services claimed, agents must disclose and certify their services to the SBA. *See* 13 C.F.R. § 103.5(a). This certification is embodied in SBA Form 159, the "Fee Disclosure and Compensation Agreement," which "must be completed and signed by the SBA Lender and Applicant whenever an Agent is paid by either the Applicant or the SBA Lender in connection with the SBA loan application." SBA Form 159 (rev. Apr. 2018).[3] Form 159 also requires the lender to certify that "representations of services rendered and the amounts charged as identified in this form are reasonable and satisfactory to it." *Id.*; *see also* 13 C.F.R. § 103.5(b) (requiring that total compensation charged by an agent be reasonable).

S&W agrees that Form 159 "must" be submitted as a precondition to agent compensation. *See* Am. Compl. ¶ 65. But S&W does not allege that the form was

---

[2]  Reading the First IFR as S&W suggests would upend long-established agency law which does not recognize "involuntary agency." An agency relationship can only arise where the principal "manifests assent" through words or conduct that an agent can act on its behalf. *See* Restatement (Third) of Agency §§ 1.01, 1.03 (2006).

[3]  *Available at* https://www.sba.gov/document/sba-form-159-fee-disclosure-compensation-agreement.

ever submitted here, or that ServisFirst certified its services.  S&W's contention that lenders must compensate unauthorized agents is at odds with the lender's obligation to certify that the agent's services were "reasonable and satisfactory." *See id*.; *see also* 13 C.F.R. § 103.5(b).

> **3.     Explicit Agreements Between Lenders and Agents Are Necessary to Address Contingencies Associated with SBA Payments.**

An explicit agreement between lender and agent, as contemplated by the authorization requirement in the 7(a) regulations, is also necessary to address contingencies specific to the SBA's review of PPP applications and the potential clawback of lenders' processing fees.  The SBA may review any PPP loan at any time in its discretion.  *See* Loan Review Procedures IFR, 85 Fed. Reg. at 33,012. In connection with that review, the SBA may claw back the lender processing fee if it determines the borrower is ineligible.  *See id*. at 33,014.   The SBA may also claw back the processing fee if the lender fails to abide by PPP rules.  *See id*. Absent an explicit agreement between lenders and agents addressing such contingencies, lenders would have no ability to recover an agent fee paid out of funds clawed back by the SBA—even in circumstances where the agent is responsible for the borrower's ineligibility.   Neither Congress nor the SBA could have intended such an inequitable result.

### 4.    S&W's Interpretation of the First IFR Would Lead to Fraud and Abuse.

Automatic payment by lenders to any agent that claims to have assisted a borrower would lead to fraud and abuse.  If a lender is required to compensate an agent, regardless of clear statutory language to the contrary and regardless of whether the lender has certified in Form 159 that the services were "reasonable and satisfactory," there is no control over the quality of the services rendered or the appropriateness of the fee charged—or even whether the purported services were provided at all.  S&W's apparent contention that the agent may certify its own services, Am. Compl. ¶ 65, makes no sense and runs counter to the SBA's long-held concerns about agent-fee fraud and the fact that SBA has consistently pointed to Form 159 as a safeguard against such fraud.  *See, e.g.*, SBA, Off. of the Inspector Gen., *Report on the Most Serious Management and Performance Challenges Facing the Small Business Administration in Fiscal Year 2019*, at 8, 9 (Oct. 11, 2018) ("OIG investigations have revealed a pattern of fraud by loan packagers and other for-fee agents in the 7(a) Loan program, involving hundreds of millions of dollars.").[4]

---

[4]  *Available at* https://www.sba.gov/sites/default/files/2019-08/SBA-OIG-Report-19- 012.pdf.

Such a scheme would also upend the typical SBA practice of permitting lenders to choose the agents with whom they wish to associate, again, in part, to guard against fraud. *See* SBA Info. Notice No. 9000-1793, SBA, Off. of the Inspector Gen. (Apr. 7, 2009) (outlining lender guidelines "[t]o protect against a potentially corrupt loan agent").[5]   In sum, the notion that lenders must simply accept and compensate any demand for payment by anyone who claims to have been an agent is contrary to the regulatory scheme and the SBA's historical concerns about agent fraud.

> **5.   The Common Law Confirms there is No Entitlement to Agent Fees.**

Finally, mandating payment of *all* claimed agent fees would upend settled common law.  By expressly requiring a written agreement, the SBA makes agent compensation a question of contract.  It is well-established that "[t]here can be no contract without the mutual assent of the parties." *Utley* v. *Donaldson*, 94 U.S. 29, 47 (1876); *see* Restatement (Second) of Contracts § 17 (1981) ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.").  The agreement is what creates the payment obligation: "it is inferred that a person promises to pay for

---

[5]  *Available at* https://www.sba.gov/document/information-notice-9000-1793-detecting- fraud-small-business-administration-lending-programs.

services *which he requests or permits another to perform for him* as his

agent."  Restatement (Second) of Agency § 441 (emphasis added).

By contrast, "one has no duty to pay for services officiously rendered

without request although resulting in benefit to him."  *Id.*; *accord* Restatement

(First) of Restitution § 2 (1937).  "A person is not required to deal with another

unless he so desires."  *Id.*  Thus, "ordinarily, a person should not be required to

become an obligor unless he so desires."  *Id.*

The SBA's preexisting regulations reflect these common law principles.  As

discussed above, the SBA generally recognizes three kinds of agents:  (1) lender

service providers, who work for and are paid by the lender; (2) "packagers," who

are "employed and compensated by the Applicant"; and (3) loan brokers, who

"may be employed and compensated by either the Applicant or the SBA

Lender."  13 C.F.R. § 103.1(a).  In each case, the payor requests or agrees to the

agent's services.

S&W has not shown—and cannot show—that the CARES Act or any related

regulations displace these common law rules.  The Supreme Court has required

that "[i]n order to abrogate a common-law principle, the statute must 'speak

directly' to the question addressed by the common law."  *United States* v. *Texas*,

507 U.S. 529, 534 (1993).  Even then, courts construe statutes in derogation of the

common law strictly and narrowly.  *See Inland Dredging Co. v. Panama City Port*

15

*Auth.*, 406 F. Supp. 2d 1277, 1283 (N.D. Fla. 2005) (holding that statutes that are in derogation of the common law must be strictly construed).

There is no language in the CARES Act that "speaks directly" to common law rules.  Instead, it simply directs the SBA to establish "limits" on agent fees.  *See* 15 U.S.C. § 636(a)(36)(P)(ii).  And the regulations, for their part, merely provide that PPP agents will be paid, if at all, by lenders.  Thus, under settled common law and the pre-existing regulations, the only PPP agents entitled to compensation are those who lenders have agreed to pay.

## II.    The CARES Act Does Not Provide a Private Right of Action.

Even if the S&W claims did not conflict with the plain language of the CARES Act, the Act provides neither an express nor implied right of action for private parties to bring suit.  "[P]rivate rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Absent "[s]tatutory intent" to create a private remedy, "a cause of action does not exist and courts may not create one."  *Id*.

S&W does not allege that the CARES Act contains an express private right of action, nor could it.  *See Profiles, Inc. v. Bank of Am. Corp.*, No. SAG-20-0894, 2020 WL 1849710, at *7 (D. Md. Apr. 13, 2020) ("[T]he CARES Act does not expressly provide a private right of action.").  The Amended Complaint concedes this by seeking a ruling under the Declaratory Judgment Act.  *See* Am. Compl. ¶

187.  But the Declaratory Judgment Act does not create a private right of action either.  *See, e.g.*, *Rebuild Nw. Fla., Inc. v. Fed. Emergency Mgmt. Agency*, No. 3:17-cv-441-MCR-CJK, 2018 WL 7351690, at *1 (N.D. Fla. July 12, 2018) (citing *Musselman v. Blue Cross & Blue Shield of Ala.*, 684 F. App'x 824, 829 (11th Cir. 2017)).  Because no express private right of action exists under the CARES Act, "the burden rests with [plaintiff] to establish that an implied private right of action exists."  *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002).

S&W fails to meet that burden.  In fact, it does not even allege an implied private right of action.  This is likely because the Eleventh Circuit has repeatedly held that the Small Business Act, which the CARES Act amends in limited part, does *not* confer a private right of action.  *See United States v. Fid. Capital Corp.*, 920 F.2d 827, 838 n.39 (11th Cir. 1991); *Bulluck v. Newtek Small Bus. Fin., Inc.*, 2020 WL 1490702, at *3 (11th Cir. Mar. 27, 2020).[6] Nothing in the CARES Act changes this analysis, and the only court to address whether the CARES Act itself creates a private right of action has held that it does not.  *See Profiles*, 2020 WL 1849710, at *7.[7]

---

[6]  *Accord Crandal v. Ball, Ball & Brosamer, Inc.*, 99 F.3d 907, 909 (9th Cir. 1996); *Searcy v. Houston Lighting & Power Co.*, 907 F.2d 562, 563–64 (5th Cir. 1990).

[7]  *See also* Order, *Profiles*, No. 20-1438 (4th Cir. May 1, 2020), ECF No. 27 (denying plaintiff's request for an emergency injunction pending appeal).

Courts have sometimes looked to four factors to determine the existence of an implied private right of action.[8] *See, e.g.*, *McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 722 (11th Cir. 2002).  The "central inquiry," however, is "whether Congress intended to create, either expressly or by implication, a private cause of action."  *Id*. (quoting *Sandoval*, 532 U.S. at 286).  "[T]he Supreme Court has gradually receded from its reliance on [the other] three . . . factors," which "remain relevant *only* insofar as they provide evidence of whether Congress intended to create a private right of action."  *Love v. Delta Air Lines*, 310 F.3d 1347, 1351–52 (11th Cir. 2002) (emphasis in original); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 751 (2020) (Thomas, J., concurring) (noting that *Sandoval* rejected the Court's previous "freewheeling approach" to implying private rights of action).

"[T]he bar for showing legislative intent is high."  *Love*, 310 F.3d at 1352. (quotation omitted).  "Congressional intent to create a private right of action will not be presumed," and "[t]here must be clear evidence of Congress's intent to

---

[8] The four factors are: (1) whether "the statute create[s] a federal right in favor of the plaintiff"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether it "is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff"; and (4) whether "the cause of action [is] one traditionally relegated to state law." *McDonald*, 291 F.3d at 722 (quoting *Cort v. Ash*, 422 U.S. 66, 78 (1975)).

create a cause of action." *McDonald*, 291 F.3d at 722 (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1345 (11th Cir. 1997)).

S&W cannot clear that high bar.  The entirety of the section of the CARES Act at issue here, captioned "FEE LIMITS," provides: "An agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator."  15 U.S.C. § 636(a)(36)(P)(ii).  Neither this text nor the rest of the statute evince *any* intent to create a private right of action in favor of PPP agents.

First, the relevant statutory provision does not contain "[r]ights-creating language" which confers rights "directly" on PPP agents.    *See Love*, 310 F.3d at 1352 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n.3 (1979)). Rather than creating rights in the agents' favor, the fee-cap provision *prohibits* certain conduct by agents.   A private right of action will not be inferred where, as here, the plaintiff is not the intended beneficiary of the statute. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 332 (2015) ("We doubt . . . that providers are intended beneficiaries . . . of the Medicaid agreement, which was concluded for the benefit of the infirm whom the providers were to serve, rather than for the benefit of the providers themselves.").   Indeed, the CARES Act does not even confer a private cause of action to small business borrowers, who *are* the intended beneficiaries. *See Profiles*, 2020 WL 1849710, at *7.

19

Second, as the recent *Profiles* decision notes, "the view that Congress did not intend to create a separate private right of action in the CARES Act is further bolstered by the criminal and civil enforcement regime codified in the SBA." 2020 WL 1849710, at *6; *see* 15 U.S.C. § 650(a)(2), (c) (conferring enforcement authority upon the SBA Administrator). Because Congress "provide[d] a discernable enforcement mechanism," that mechanism should not be disturbed by implying a private right of action. *Love*, 310 F.3d at 1353.

Finally, the First IFR does not and cannot create a private right of action. "[I]f examination of a statute's text, structure, and history does not yield the conclusion that Congress intended it to confer a private right and a private remedy, . . . such a right may not be created or conferred by regulations promulgated to interpret and enforce it[.]" *Id.* at 1353. In other words, "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Sandoval*, 532 U.S. at 291. Because the CARES Act clearly does not reflect Congressional intent to confer a private right of action, that ends the inquiry. For this reason alone, Count Four of the Amended Complaint must be dismissed.

### III. S&W Fails to State a Claim for Unjust Enrichment or Contract Implied in Law.

S&W's claims for unjust enrichment (Count One) and contract implied in law (Count Two) are duplicative, and both fail. Under Florida law, there is no

difference between claims for unjust enrichment and contract implied in law.  *See Monahan v. WHM, LLC*, No. 09-80198-CIV, 2010 WL 11504336, at *4 (S.D. Fla. Mar. 18, 2010).  "To the extent Plaintiffs allege a contract implied in law, such contracts must be pled in the same way as unjust enrichment claims[.]"  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 n.2 (11th Cir. 2012).

There are four elements to an unjust enrichment claim (or contract implied in law) under Florida law: (1) the plaintiff has conferred a direct benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit.  *Am. Safety Ins. Serv. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007).  Other than threadbare recitals of the elements of the cause of action, which are not entitled to the assumption of truth, *see Iqbal*, 556 U.S. at 679, the Amended Complaint fails to plausibly allege elements (1), (3), and (4) of an unjust enrichment claim.  Moreover, as a matter of law, element (4) cannot be met.

### A.   S&W Does Not Allege It Conferred a Direct Benefit on ServisFirst.

Florida courts strictly adhere to the requirement that the plaintiff confer a direct benefit on the defendant.  *See Donoff v. Delta Air Lines, Inc.*, 2020 WL 1226975, at *12 (S.D. Fla. Mar. 6, 2020); *see GVB MD, LLC v. United Healthcare*

21

*Ins. Co.*, 2019 WL 5260274, at *4 (S.D. Fla. Aug. 14, 2019) (applying direct

benefit requirement to claim for unjust enrichment and contract implied in law).

Here, the Amended Complaint does not allege that S&W conferred a direct

benefit on ServisFirst.  Rather, it alleges that Borrower R asked S&W for

assistance, Borrower R hired S&W, and Borrower R received S&W's services.

Am. Compl.  ¶¶ 81-84.  Thus, if S&W conferred a direct benefit on anyone, it is

Borrower R, not ServisFirst.  *See A & E Auto Body, Inc. v. 21st Century*

*Centennial Ins. Co.*, 2015 WL 12867010, at *5– 6 (M.D. Fla. Jan. 22, 2015) (auto

repair shop's work for customers did not confer benefit on insurer, which merely

incurred an obligation to pay by virtue of its contract with the customers).

Instead, it is clear from the Amended Complaint that it is the SBA who has

or will confer a direct benefit on ServisFirst by paying the fee authorized and set

by Congress to reimburse ServisFirst for its efforts in processing Borrower R's

loan.  Accordingly, there being no plausible allegation of any direct benefit

conferred on ServisFirst by S&W, the first element of its unjust enrichment and

implied contract claims cannot be met and those claims should be dismissed.  *See*

*Johnson v. Catamaran Health Sol., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017)

(dismissing claim where plaintiff paid membership fees to a third party that in turn

paid a premium to defendant); *Peoples' Nat'l Bank of Commerce v. First Union*

*Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (claim failed

where the alleged payments in which plaintiff claimed an interest were made by a third party, not plaintiff); *Extraordinary Tile Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 403 (Fla. 3d DCA 2009) (dismissing unjust enrichment claim based on attenuated relationship between plaintiff and defendant).

### B.   S&W Has Not Plausibly Alleged That ServisFirst Accepted Any Benefit Conferred by S&W.

Additionally, S&W has failed to plausibly allege that ServisFirst ever accepted any benefit that S&W allegedly conferred on ServisFirst.  In *Coffee Pot Plaza Partnership v. Arrow Air Conditioning and Refrigeration, Inc.*, for example, the court reversed a judgment premised on a theory of unjust enrichment because the defendant had not accepted the benefit allegedly conferred.  412 So. 2d 883 (Fla. Dist. Ct. App. 1982).   In that case, the defendant landlord leased space to a tenant and allowed the tenant to use certain refrigeration equipment.  The tenant hired the plaintiff to repair the equipment, but the tenant never paid for the work.  When the defendant landlord regained the premises upon the tenant's default, the plaintiff sued the landlord on an unjust enrichment theory, arguing that the landlord should pay the repair bill.

Following a judgment in favor of the repair company, the defendant landlord appealed, and the appellate court reversed on the basis that the defendant did not accept the benefit of the repair work from the plaintiff.  *See id*. at 884.  The court reasoned, "Here, [the defendant landlord] did not request that Arrow repair and

23

install the refrigeration equipment.  Moreover, it cannot be said that [the defendant] knowingly and voluntarily accepted the benefits of Arrow's work since it did not come into control of the equipment until after Arrow had completed the work and only then because it was forced to terminate [the tenant's] lease. . . . Arrow contracted with [the tenant] to do the work, and it must look to [the tenant] for payment." *Id*.

The same analysis applies here to S&W's threadbare allegations.  S&W's relationship, if any, was with its client, Borrower R.  S&W concedes that it did not have a contract with ServisFirst, and S&W has failed to allege that ServisFirst knowingly and voluntarily accepted the benefit of S&W's work.  S&W alleges only that it did work and ServisFirst allegedly received a benefit from that work, and therefore, ServisFirst should pay S&W.  That is not enough to establish a plausible claim for unjust enrichment.

### C.  ServisFirst's Actions Are Not Inequitable.

Plaintiff's unjust enrichment claim also fails because ServisFirst's actions are not inequitable as a matter of law.  This is true for at least two reasons.

First, Congress explicitly directed that the SBA "*shall reimburse* a lender authorized to make a covered loan . . . ." a specific amount depending on the size of the loan.  15 U.S.C. § 636(a)(36)(P)(i) (emphasis added).  The word "reimburse" has a clear meaning, one that is consistent with the dictionary

definition of it.  Merriam-Webster defines reimburse as "to pay back to someone" or "to make restoration or payment of an equivalent to."  *Reimburse*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/reimburse  (last visited June 16, 2020).  Similarly, the Cambridge Dictionary defines reimburse as "the act of paying back money to someone who has spent it for you or lost it because of you."  *Reimburse*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english /reimburse (last visited June 16, 2020).  As a matter of law, it would not be inequitable and ServisFirst cannot be unjustly enriched by retaining a fee, the payment of which was directed by Congress for the purpose of paying it back for its efforts in processing PPP loans.

Second, S&W has not and cannot allege that it had a reasonable expectation that ServisFirst would pay it any portion of its fee.  Indeed, "[a] claim for unjust enrichment . . . requires examination of . . . *the expectations of the parties* to determine whether an inequity would result or whether their *reasonable expectations* were met."  *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1100 (Fla. 3rd DCA 2014) (emphasis added) (citations omitted).  S&W has no right to payment of fees under the CARES Act and thus could not have reasonably expected that ServisFirst, with whom it had no agreement, would pay it.  For this reason, too, S&W's unjust enrichment claim fails as a matter of law.

## IV.   S&W Fails to State a Claim for Conversion.

25

For its conversion claim, S&W alleges that "[a] portion of the origination fee each Defendant received was the rightful property of [S&W]."  Am. Compl. ¶ 183. It alleges elsewhere in the Amended Complaint that the fees are "paid directly to lenders by the SBA," *id.* ¶ 9, 49, and then any agent fees "will be paid" to the agent "by the lender." *Id.* ¶ 12.  These allegations do not amount to conversion, but merely a claimed monetary obligation.  Conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (emphasis added).

Money is rarely the proper subject of a conversion claim.  It is only when the claim is for "specific money capable of identification," such as a "sum of money sealed in an addressed envelope [that was] misdelivered," *Zagar*, 243 So. 2d at 648, which is obviously not the case here.

A traditional monetary obligation, like the one claimed here, never gives rise to a conversion claim under Florida law. *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541–42 (11th Cir. 1990); *Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*, 2019 WL 3532024, at *8 (S.D. Fla. 2019); *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. Dist. Ct. App. 1970) ("A mere obligation to pay money may not be enforced by a conversion action.").

For these reasons, the conversion claim in Count Three should also be dismissed.

## **CONCLUSION**

Based on the foregoing, and pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant ServisFirst Bank respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully submitted this 17th day of June, 2020.

<div style="margin-left: 40%;">

*/s/ Logan T. Matthews*
Logan T. Matthews
Florida Bar No. 1002506
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone: (205) 581-0700
Facsimile: (205) 581-0799
One of the Attorneys for Defendant
ServisFirst Bank

</div>

OF COUNSEL:
Sara Anne Ford (admitted *pro hac vice*)
*sford@lightfootlaw.com*
R. Ashby Pate (admitted *pro hac vice*)
*apate@lightfootlaw.com*
Logan T. Matthews (Florida Bar No. 1002506)
*lmatthews@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone: (205) 581-0700
Facsimile: (205) 581-0799

## <u>LOCAL RULE 7.1(F) WORD LIMIT CERTIFICATION</u>

Pursuant to Northern District of Florida Local Rule 7.1(F), I certify that this Motion to Dismiss the Amended Complaint and Memorandum of Law in Support Thereof is in compliance with the Court's word limit. According to the word processing program used to prepare this motion and memorandum, the document contains 6,259 words, exclusive of the case style, signature block, and this certification.

<div style="text-align: right">

*/s/ Logan T. Matthews*
One of the Attorneys for Defendant
ServisFirst Bank

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

*/s/ Logan T. Matthews*
One of the Attorneys for Defendant
ServisFirst Bank